UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARTIZE KIRKLAND,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN MCCRAY *et. al.*,<br><br>Defendants. | CAUSE NO. 3:23cv1033 DRL |

OPINION AND ORDER

Sergeant Justin McCray and Sergeant Twanna Jiles move to enforce their settlement with Martize Kirkland. They say the parties entered into a binding agreement to settle all claims, as both sides reported to the court on April 22, 2026. They argue that Mr. Kirkland's later dissatisfaction with the settlement does not negate its validity. After review of the record and briefing, the court grants the motion to enforce the settlement, conditioned on providing the court evidence of approvals from the State of Indiana's Governor and Attorney General.

BACKGROUND

When this suit began in August 2023, Mr. Kirkland was an inmate at Westville Correctional Facility and used a wheelchair. He claimed that on December 23, 2022, he was forcibly pulled from his wheelchair by Sgt. McCray and Sgt. Jiles and that Sgt. McCray failed to respond to his cries for help or to assess his medical condition afterward.

Mr. Kirkland proceeded *pro se* at first. The court later appointed him counsel for settlement purposes only [93]. On February 26, 2026, the parties participated in an in-person settlement conference with Magistrate Judge Abizer Zanzi. Mr. Kirkland attended the conference with his counsel. The parties were unable to settle during the conference. Afterward, Magistrate Judge

Zanzi ordered the parties to continue fact discovery and negotiations until April 27, 2026, and to file a status report by April 20, 2026, which was later extended to April 22.

On that last day, both parties filed notices of a settlement. The defense represented that the "parties have reached a settlement amount, subject to approval by the Attorney General and Governor of the State of Indiana," and that they were "in the process of completing the necessary documentation through the Attorney General's Office to finalize the settlement and release payment" [108]. Mr. Kirkland "concurred" that "the parties [] reached a settlement amount, subject to approval by the Attorney General and Governor of the State of Indiana" [109]. The court promptly ordered that all proceedings be stayed pending final settlement papers.

Two days later, Mr. Kirkland's counsel filed a motion to withdraw, which the court granted on May 4, 2026 [112; 113]. On May 6, Mr. Kirkland, once more *pro se*, filed a motion to appoint substitute counsel [114]. There, he argued that his previous counsel, Kerry Connor, had failed to communicate clearly, mischaracterized his statements, and took unauthorized actions. Regarding the settlement, Mr. Kirkland said he received a $5,000 settlement offer, which he now believed was not a fair valuation of his perceived injuries and claims. The court denied the motion to substitute counsel on May 11, 2026.

That same day defense counsel emailed Mr. Kirkland the proposed draft settlement release, which they claim memorialized the previously agreed-upon settlement terms [120-1]. The agreement outlined a $5,000 settlement, subject to the approval of the Indiana Attorney General and the Governor. At the time, the defense believed the only remaining step was to sign the agreement so that payment could be issued. Mr. Kirkland responded via telephone on May 11, 2026, and informed opposing counsel that he no longer wished to settle for $5,000. Through

several calls that day, Mr. Kirkland explained how he underwent emergency surgery on May 4, 2026 (after the supposed settlement) and was now in the hospital from complications he believes were related to the alleged 2022 assault.

On May 12, 2026, defense counsel emailed Mr. Kirkland seeking to confirm and clarify his position moving forward. Defense counsel summarized her understanding of Mr. Kirkland's contentions as follows:

> During our two telephone conversations yesterday, you advised me that although you previously agreed to resolve this matter for $5,000.00 while represented by Ms. Connor, you no longer wish to proceed with the settlement because you now believe the settlement amount is insufficient. You further advised that you are currently hospitalized and undergoing treatment that you believe is related to the incident at issue in this litigation. You and your assistant Ms. Davis both conveyed during our conversations that your current position is that you no longer wish to proceed with the previously agreed settlement because $5,000.00 is insufficient, and you now believe your claimed injuries and damages warrant additional compensation.

[120-2]. Mr. Kirkland responded to the email:

> I do not agree to proceed with the previously discussed settlement amount of $5,000. My position is firm at $15,000. On May 4, 2026, I underwent emergency spine surgery due to loss of feeling on my left side, which I attribute to the assault by Defendant McCracy. As I previously advised Ms. Connor, the Court, and you, I am not open to resolving this matter for $5,000.

[*id.*]. Defense counsel responded that she did not have authority to settle for $15,000 and that her clients intended to notify the court that a dispute had arisen and to seek enforcement of the settlement reached by the parties. Mr. Kirkland responded that "he never agreed to $5,000" and only said he "would consider it and after being misled by attorney Kerry Connor" that he no longer was "interested in even entertaining it," and wanted the defense "to reopen negotiation" and to "cut the BS . . . reasonable reparations" [*id.*].

On May 15, 2026, Mr. Kirkland filed a "Notice of Significant Medical Development and Motion to Stay Settlement Proceedings" [118]. In this filing, Mr. Kirkland asked that "settlement proceedings be stayed pending [his] medical recovery." He claimed that he recently underwent emergency spinal surgery on May 4, 2026, and due to his current medical condition, hospitalization, and rehabilitation, he could not "meaningfully participate in settlement proceedings." After his recovery, Mr. Kirkland indicated his desire to proceed to a jury trial. Today, both sides now represented by counsel, the parties debate whether a settlement should be enforced or the case permitted to proceed to trial.

STANDARD

An agreement to settle a claim in federal court is enforced just like any other contract, with state law governing whether a contract to settle a case was made. *Dillard v. Starcon Int'l Inc.*, 483 F.3d 502, 506-507 (7th Cir. 2007). Though some litigants believe that "they can change their mind at any time before they actually sign the settlement agreement[,] . . . that perception is often unfounded in the law." *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 337 (7th Cir. 2000) (affirming district court's enforcement of settlement agreement). "Indiana strongly favors settlement agreements and if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011) (citing *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003)). The settlement may be enforced by motion in the district court where the underlying action was reached during pending litigation. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 380-81 (1994); *Germania v. Thermasol, Ltd.,* 569 N.E.2d 730, 732 (Ind. Ct. App.

1991). Like other contract actions, the party relying on the validity of a settlement "bears the onus of proving its existence." *Perrill v. Perrill*, 126 N.E.3d 834, 840 (Ind. Ct. App. 2019).

DISCUSSION

A. *Was There a Settlement Agreement?*

The court first must decide whether an enforceable agreement exists. *Block v. Magura*, 949 N.E.2d 1261, 1265 (Ind. Ct. App. 2011). This is a question of law, and the basic requirements of a contract are offer, acceptance, consideration, and "a meeting of the minds of the contracting parties." *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind. Ct. App. 2006) (citing *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994)). Generally, a settlement agreement need not be in writing. *See Vernon v. Action*, 732 N.E.2d 805, 809 (Ind. 2000). In determining whether an enforceable contract exists, the court considers two interrelated things: (1) the parties' intent to be bound and (2) the definiteness of terms. *Sands*, 945 N.E.2d at 180.

1. *Intent to be Bound.*

Mr. Kirkland first argues that a contract was never formed because there was no "meeting of the minds." He says no evidence shows he intended to be bound by the proposed settlement agreement. He contends that the mere act of securing counsel, even one specifically appointed for settlement purposes, does not give that counsel implied or apparent authority to settle or compromise a claim out-of-court. He also says the fact he authorized settlement negotiations to occur did not endow counsel with implied or apparent authority when the defense cannot point to any document bearing his signature assenting to the settlement's terms.

The defendants respond by pointing to the court's appointment of Mr. Kirkland's counsel for the express purpose of participating in a settlement conference and assisting him with

settlement negotiations. They also argue that, given the status report filed by Mr. Kirkland, he reportedly concurred in the settlement, and it is reasonable to conclude his counsel had the power to enter into an agreement for him; hence, an "intent to be bound" can be inferred from his counsel's actions.

In Indiana, an attorney's authority to enter into a settlement agreement on behalf of her client may be derived from two distinct sources: (1) the client's conduct either toward third parties or toward the attorney; and (2) the nature of the proceedings where the settlement agreement was reached. *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1301 (Ind. 1998). In short, the client's conduct can confer either express, implied, or apparent authority on the attorney, *Beam v. Wal-Mart Stores, Inc.*, 829 F. Supp. 2d 706, 708 (S.D. Ind. 2011), or the attorney may have the authority to settle a case during a procedure in court, through the attorney's inherent agency power. *Id.* An attorney may bind her client to the terms of a settlement agreement if the attorney has actual or apparent authority to bind him, or if the client (as the principal) subsequently ratifies the agreement. *Koval,* 693 N.E.2d at 1301.

Actual authority exists when the client has in fact authorized his attorney to enter into a contract on his behalf. *See Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). Unlike such express authority, "[a]pparent authority is the authority that a third person reasonably believes an agent possesses because of some manifestation from the principal." *Koval,* 693 N.E.2d at 1304 (citations omitted); *Carr*, 89 F.3d at 331 (principal's actions must give the third party the "reasonable impression" that the agent has the authority to settle on behalf of the principal). The existence of apparent authority must be communicated, either directly or indirectly, by the principal to the opposing party. *SAR v. REV Recreation Grp., Inc.*, 2026 U.S. App. LEXIS 14951, 4 (7th Cir. May

26, 2026) (quoting *Ellison v. Town of Yorktown* 47 N.E.3d 610, 619 (Ind. Ct. App. 2015)) ("Indiana law requires a settlement to include, among other things, a meeting of the minds, which 'focuses on each party's outward manifestation of intent,' not their subjective intent."). The agent's communication will not create an apparent agency relationship. *Koval*, 693 N.E.2d at 1304. Instead, an attorney has apparent authority when the client's actions give the other contracting party a reasonable impression that the attorney has authority to enter into an agreement on the client's behalf. *Carr*, 89 F.3d at 331-32. During litigation, an attorney may have apparent authority to bind his client to a settlement agreement. "[W]hen a party places an agent in the position of sole negotiator on [his] behalf, it may be reasonable for the third person to believe that the agent possesses authority to act for the principal. In such instance, the conduct of the principal constitutes the requisite manifestation or communication, although indirect." *Scott v. Randle*, 697 N.E.2d 60, 67 (Ind. Ct. App. 1998).

Mr. Kirkland is correct that apparent authority to settle out-of-court is not conferred merely by retaining counsel. *See Koval*, 693 N.E.2d at 1301. But here, Sgts. McCray and Jiles relied on more than the mere fact that Ms. Connor was appointed counsel for Mr. Kirkland in reasonably concluding that she had apparent authority to enter into a settlement on his behalf. Counsel was appointed specifically to represent Mr. Kirkland at a judicial settlement conference. He accepted the appointment (indeed, he had asked for counsel). He attended the settlement conference with counsel. In doing so, and without objection, he manifested his intention that she have authority to negotiate a resolution on his behalf. *See State Farm Mut. Auto. Ins. v. Noble*, 854 N.E. 925, 932 (Ind. Ct. App. 2006) (failure to complain or object to an agent's actions may create a reasonable inference of apparent authority). The court ordered the parties to continue

negotiations and to file a report about their success or status on April 22, 2026—all an outgrowth of this in-court proceeding. Mr. Kirkland continued to work with his counsel afterward as court-ordered sole negotiator. His conduct throughout gave the reasonable impression that his counsel, at the time she filed the notice reporting a settlement, had apparent authority to bind Mr. Kirkland to it. *See Scott*, 697 N.E.2d at 67 (apparent authority existed when history of the case demonstrated that plaintiffs had placed their attorney "in the position of sole negotiator on [their] behalf"). Even his after-the-fact motion to appoint substitute counsel never disputed his counsel's authority, only his displeasure and desire to get a different settlement amount. In short, his trial counsel had apparent authority on this record to settle this case.

2. *Definiteness of Terms.*

"A settlement agreement is enforceable if there was a meeting of the minds or mutual assent to all material terms." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) (citations omitted). A binding and enforceable oral contract cannot arise unless the terms of the alleged agreement are sufficiently definite and certain. *Workman v. Douglas*, 419 N.E.2d 1340, 1345 (Ind. Ct. App. 1981). "A court will not find that a contract is so uncertain as to preclude specific enforcement [when] a reasonable and logical interpretation will render the contract valid." *Conwell v. Gray Loon Outdoor Marketing Group, Inc.*, 906 N.E.2d 805, 813 (Ind. 2009). Both sides here reported an oral settlement agreement on April 22, subject to only the State's approval. The question for the court is whether Mr. Kirkland and Sgts. McCray and Jiles agreed to all material terms, and whether the court can discern what those terms were (and are). *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 442 (Ind. 2015).

But no one argues today that this agreement lacks definiteness, just that the agreement was not authorized through Mr. Kirkland and not approved by the State. The court remains confined to the arguments of the parties. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (party presentation rule); *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (same). Mr. Kirkland once alluded to this issue only in his communications with defense counsel. Both his and the other side's status reports were silent on the monetary amount of the settlement, but the notices reference an agreement to an amount (even if undisclosed), a release, and a stipulation to dismiss. Today, Sgts. McCray and Jiles say the parties agreed to $5,000 as the settlement payment.

As authorized, Mr. Kirkland's notice reported a meeting of the minds on essential terms, which, paired with the defense's status report, conditioned the settlement only on the Governor's and Attorney General's approval. *See Batchelor*, 853 N.E.2d at 165. Without argument, this issue thus rises and falls with the finding on counsel's apparent authority. Even so, Mr. Kirkland's subsequent communications with defense counsel suggest that $5,000 was, in fact, the settlement amount. From the record, after the settlement, Mr. Kirkland seemed at some point to believe his medical injuries and new circumstances warranted additional compensation. To counsel, he asked to "reopen" negotiations—something one does not typically say unless negotiations have concluded with the "previously discussed settlement amount of $5,000." Being unhappy with a settlement in retrospect is not the same as lacking an agreement in the first place. *See Scott*, 697 N.E.2d. at 68; *Carr*, 89 F.3d at 331. Once a litigant agrees to settle a claim, and stands to receive that amount, he cannot "be heard to complain that the settlement was for less than the actual value of the action." *Norris v. United States Fidelity & Guaranty Co.*, 436 N.E.2d 1191, 1194 (Ind. Ct. App. 1982). The settlement is enforceable because Mr. Kirkland's counsel had apparent

authority to enter into a binding settlement, and the parties had a meeting of the minds as to a sum certain, in exchange for a release and dismissal of the suit, subject to approval from the State.

B. *Was the Condition Precedent Satisfied?*

Mr. Kirkland's final argument is that even if there was a "meeting of the minds," the oral settlement terms clearly indicated that the agreement was subject to the condition precedent that it be approved by the Governor and Attorney General. He contends that, until the moment the settlement was approved, he remained free to repudiate it. Mr. Kirkland argues that the defense counsel has not provided a date or time regarding when such approval occurred, they failed to carry their burden in showing an enforceable agreement existed before he repudiated.

A condition precedent is a condition that must be satisfied before the parties' agreement becomes binding, or a condition that must be fulfilled before the duty to perform a specific obligation arises. *Cricket Ridge, LLC v. Wright*, 880 N.E.2d 1271, 1278 (Ind. Ct. App. 2008). When the condition precedent never occurs, a party cannot enforce a conditional contract obligation. *See id.* Everyone agrees here that these approvals were necessary.[1] Given this, if the approval of the Governor and Attorney General were not obtained, the agreement is not enforceable. *See Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1018-20 (Ind. 1998); *see also City of Plymouth v. Michael Kinder & Sons, Inc.*, 137 N.E.3d 312, 317 (Ind. Ct. App. 2019) (explaining that when a mediation agreement required the City of Plymouth Redevelopment Commission to approve a settlement offer of $130,000 before a party could accept it and the Commission did not approve the offer, the agreement was not enforceable).

---

[1] Approval by the Governor is statutorily required for any settlement against the State. Ind. Code § 34-13-3-14; *see also Ind. State Highway Comm'n v. Curtis,* 704 N.E.2d 1015, 1020 (Ind. 1998) ("[T]he Governor's approval is required for any compromise of a claim against the State.").

In response, Sgts. McCray and Jiles maintain that, after the reports of settlement on April 22, they pursued the required approvals through standard channels and represent, through counsel as an officer of the court, that approvals were obtained on April 27, 2026. They also say they can verify that fact without requiring disclosures of communications that include privileged and confidential attorney-client information. The court would be of the mind to accept this representation, for if defense counsel, who has a sterling reputation, were inaccurate in representing any such key fact to the court, this would be the first the court has ever heard of it. But verification aids not just the court, but Mr. Kirkland. The court will permit Sgts. McCray and Jiles to verify the procurement and dates of the necessary approvals. Anticipating this showing, the court will grant the motion to enforce the settlement and stay its effect until its receipt.

CONCLUSION

For these reasons, the court GRANTS the motion to enforce the settlement [120], ORDERS Sgts. McCray and Jiles to produce evidence of the Governor's and Attorney General's approval of the settlement and the dates of such approvals by September 22, 2026, DENIES the motion stay the proceedings, except the court STAYS this enforcement pending receipt of approvals and further order of the court.

SO ORDERED.

September 8, 2026

*s/ Damon R. Leichty*
Judge, United States District Court